UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| STEPHEN BUSHANSKY, | : |
| Plaintiff, | : Case No. _____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| BIOHAVEN PHARMACEUTICAL HOLDING | : **THE FEDERAL SECURITIES LAWS** |

STEPHEN BUSHANSKY,

         Plaintiff,

    v.

BIOHAVEN PHARMACEUTICAL HOLDING
COMPANY LTD., JOHN W. CHILDS,
GREGORY H. BAILEY, KISHEN MEHTA,
VLAD CORIC, JULIA P. GREGORY,
MICHAEL T. HEFFERNAN, ROBERT J.
HUGIN, and IRINA ANTONIJEVIC,

        Defendants.

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

------------------------------------------------------------

      Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

      1.    This action is brought by Plaintiff against Biohaven Pharmaceutical Holding Company Ltd.("Biohaven" or the "Company") and the members of Biohaven's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Biohaven will be acquired by Pfizer Inc. ("Pfizer") through Pfizer's subsidiary Bulldog (BVI) Ltd. ("Merger Sub") (the "Proposed Transaction").

2.      On May 10, 2022, Biohaven and Pfizer issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated May 9, 2022, to sell Biohaven to Pfizer (the "Merger Agreement").  In connection with and as a condition to the merger, the Company and Biohaven Research Ltd., a British Virgin Islands business company limited by shares and a wholly owned subsidiary of the Company ("SpinCo)," entered into a Separation and Distribution Agreement, dated as of May 9, 2022 (the "Separation Agreement"), pursuant to which, on the terms and subject to the conditions set forth in the Separation Agreement, immediately prior to the effective time of the merger (the "Effective Time"): (i) the Company will effect a pre-closing reorganization (the "Pre-Closing Reorganization"), which will result in (x) SpinCo owning, assuming or retaining certain assets and liabilities of the Company and its subsidiaries related to the Company's pipeline assets and businesses, and (y) the Company owning, assuming or retaining all other assets and liabilities, including those associated with the Company's platform for the research, development, manufacture and commercialization of calcitonin gene-related peptide receptor antagonists, including rimegepant, zavegepant and the Heptares Therapeutics Limited pre-clinical CGRP portfolio (the "CGRP Business"); and (ii) thereafter, the Company will distribute to its shareholders as of the record date all of the issued and outstanding common shares of SpinCo ("SpinCo Common Shares"), on a pro rata basis (the "Spin-Off"), at a ratio of one SpinCo Common Share for every two common shares of the Company (the "Shares").  Under the terms of the Merger Agreement, Biohaven shareholders will receive both of: (i) 0.5 shares of SpinCo common stock, and (ii) $148.50 in cash for each share of Biohaven common stock they own (the "Merger Consideration").

3.      On July 1, 2022, Biohaven filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Biohaven

stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Biohaven management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview Partners LLC ("Centerview"); (ii) Centerview's potential conflicts of interest; and (iii) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Biohaven stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Biohaven's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Biohaven's common stock trades on The New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Biohaven.

9.     Defendant Biohaven is a British Virgin Islands business company limited by shares, with its principal executive offices located at 215 Church Street, New Haven, Connecticut 06510. Biohaven, a biopharmaceutical company, develops product candidates targeting neurological and neuropsychiatric diseases, and rare disorders in the United States.  Biohaven's shares trade on the New York Stock Exchange under the ticker symbol "BHVN."

10.     Defendant John W. Childs ("Childs") has been a director of the Company since January 2014.

11.     Defendant Gregory H. Bailey ("Bailey") has been a director of the Company since January 2014.

12.     Defendant Kishen Mehta ("Mehta") has been a director of the Company since June 2021.

13.     Defendant Vlad Coric ("Coric") has been Chief Executive Officer ("CEO") and a director of the Company since October 2015.

14.     Defendant Julia P. Gregory ("Gregory") has been a director of the Company since August 2017.

15.     Defendant Michael T. Heffernan ("Heffernan") is Lead Independent Director and has been a director of the Company since January 2020.

16.     Defendant Robert J. Hugin ("Hugin") has been a director of the Company since June 10, 2020.

17.     Defendant Irina Antonijevic ("Antonijevic") has been a director of the Company since May 1, 2022.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Pfizer is a research-based, global biopharmaceutical company.  Pfizer applies science and its global resources to bring therapies to people that extend and improve their lives through the discovery, development, manufacturing, marketing, sale, and distribution of biopharmaceutical products worldwide.  Pfizer works across developed and emerging markets to advance wellness, prevention, treatments, and cures that challenge the most feared diseases of our time.  Pfizer collaborates with healthcare providers, governments, and local communities to support and expand access to reliable, affordable healthcare around the world.  For the year ended December 31, 2021, Pfizer generated revenues of $81.3 billion and net income of $22 billion.

20.     Merger Sub is a British Virgin Islands business company limited by shares and a wholly owned subsidiary of Pfizer.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Biohaven is a commercial-stage biopharmaceutical company with a portfolio of innovative, best-in-class therapies to improve the lives of patients with debilitating neurological

and neuropsychiatric diseases, including rare disorders.   The Company's Neuroinnovation portfolio includes FDA-approved NURTEC ODT (rimegepant) for the acute and preventive treatment of migraine and a broad pipeline of product candidates across five distinct mechanistic platforms: calcitonin gene related peptide ("CGRP") receptor antagonism, glutamate modulation, myeloperoxidase ("MPO") inhibition, Kv7 Ion Channel Activators ("Kv7"), and Myostatin.

22.   The Migraine Research Foundation ranks migraine as the world's third most prevalent illness, with approximately 40 million individuals suffering from migraine attacks in the U.S., and 1 billion worldwide.   While most sufferers experience migraine attacks once or twice per month, more than 4 million people in the U.S. alone have chronic migraine, defined as experiencing at least 15 headache days per month, of which at least eight are migraine, for more than three months.   Others have episodic migraine, which is characterized by experiencing fewer than 15 migraine days per month.   People with frequent episodes of migraine may progress to chronic migraine over time, thus migraine is a continuum disease.   Biohaven's exclusive commercial product, NURTEC ODT for the acute treatment of migraine, was approved by the FDA on February 27, 2020, and became available by prescription in U.S. pharmacies on March 12, 2020.   NURTEC ODT was also approved for the preventive treatment of migraine by the FDA on May 27, 2021.   NURTEC ODT is the first and only medication proven to both treat and prevent migraine.   NURTEC ODT differentiates itself as a treatment in the migraine market by allowing patients and doctors to customize a single therapy to treat and prevent migraine attacks.   It is further differentiated by its rapid onset and sustained efficacy for lasting migraine control.

23.   On May 10, 2022, the Company announced its first quarter 2022 financial results and business developments, including record reported revenues of $319 million.   Q1 2022 net product revenue from sales of NURTEC ODT totaled $123.6 million, representing a 182%

increase over Q1 2021.  NURTEC ODT achieved 2,000,000 prescriptions, and over 69,000 unique

prescribers, an increase of 5,400 prescribers from the fourth quarter signaling continued traction

across the prescribing community.   During the quarter, Biohaven received EU approval of

rimegepant 75 mg for the acute and preventive treatment of migraine, from the European

Commission ("EC").  The EC approval will be valid in the 27 member countries of the EU as well

as Iceland, Liechtenstein, and Norway and local reimbursement approval will follow.  Defendant

Coric commented:

> NURTEC ODT continues to be the leading migraine therapy in the oral CGRP class
> and demonstrated 8% sequential TRx growth compared to the previous quarter.
> The approval of the prevention indication last year has established NURTEC ODT
> as the only "all-in-one" migraine therapy and contributed to the substantial year-
> over-year first quarter revenue growth of 182%.  Although strong growth in the mix
> of 2-pack (16-tablet count) sales help to drive additional volume growth and
> increases the net price per prescription, seasonal resetting of commercial insurance
> plan annual deductibles largely explains the expected pressure observed on first
> quarter net revenue generation compared to the fourth quarter.  Growing Nurtec
> ODT volume and access for patients requires significant investment.  In these
> important initial years of product launch, our strategy has been to drive brand trial
> and adoption of Nurtec ODT by investing in patient support programs and working
> with payers to ensure patient access, which also results in payer rebates and volume
> discounts related to the investments we made for incremental access.  We expect
> the investments we made in first quarter copay programs will drive volume and net
> revenue growth for NURTEC ODT in the rest of the year.
>
> In addition to continued success in the US market, we are excited about bringing
> the only 'all-in-one' therapy to both treat and prevent migraine to the approximately
> one billion migraine patients worldwide.  With EU approval for rimegepant now
> secured and additional regulatory submissions planned in China and South Korea
> in the second half of 2022, we believe we are well positioned to grow future sales
> of NURTEC ODT outside of the US.  We also look forward to providing an update
> on zavegepant following the submission of our NDA in the first quarter.  If
> approved, zavegepant will be the first and only intranasal CGRP receptor
> antagonist, offering a rapid onset of action and an important treatment alternative
> for patients who experience nausea or vomiting at the time of their migraine attacks.
> We continue to believe our migraine franchise is unmatched and we could not be
> more excited about the opportunities for continued market expansion in the months
> and years to come.

**The Proposed Transaction**

24.     On May 10, 2022, Biohaven and Pfizer issued a joint press release announcing the

Proposed Transaction, which states, in relevant part:

> NEW YORK & NEW HAVEN, CONN.--(BUSINESS WIRE)--Pfizer Inc. (NYSE: PFE) and Biohaven Pharmaceutical Holding Company Ltd. (NYSE: BHVN) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Biohaven, the maker of NURTEC® ODT, an innovative dual-acting migraine therapy approved for both acute treatment and episodic prevention of migraine in adults.
>
> ***
>
> Under the terms of the agreement, Pfizer will acquire all outstanding shares of Biohaven not already owned by Pfizer for $148.50 per share in cash. Biohaven common shareholders, including Pfizer, will also receive 0.5 of a share of New Biohaven, a new publicly traded company that will retain Biohaven's non-CGRP development stage pipeline compounds, per Biohaven common share. The boards of directors of both Biohaven and Pfizer have unanimously approved the transaction. Pfizer will pay transaction consideration totaling approximately $11.6 billion in cash. Pfizer will also make payments at closing to settle Biohaven's third party debt and for the redemption of all outstanding shares of Biohaven's redeemable preferred stock. The $148.50 cash consideration represents a premium of approximately 33% to Biohaven's volume weighted average selling price of $111.70 over the three months prior to the announcement of the transaction.
>
> The proposed transaction includes the acquisition of Biohaven's calcitonin gene-related peptide (CGRP) programs including:
>
> - Rimegepant:
>
>   o Approved in the United States (U.S.) under the trade name, NURTEC® ODT, for both the acute treatment of migraine and preventive treatment of episodic migraine
>
>   o Approved in the European Union under the trade name, VYDURA®, for both acute treatment of migraine and prophylaxis of episodic migraine
>
> - Zavegepant:
>
>   o On track for a 2Q2022 acceptance (based on March 2022 submission) in the U.S. as an intranasal spray for the acute treatment of migraine and in development as an oral soft gel for chronic migraine prevention

- A portfolio of five pre-clinical CGRP assets

"Today's announcement builds on our legacy of delivering breakthroughs for patients living with complex pain disorders and diseases that disproportionately impact women," said Nick Lagunowich, Global President, Pfizer Internal Medicine. "NURTEC® ODT, which is already the #1 prescribed migraine medicine in its class in the United States, coupled with Biohaven's CGRP pipeline, offers hope for patients suffering from migraine worldwide. We believe Pfizer is uniquely positioned to help the portfolio reach its full potential given our leading scale and capabilities, including comprehensive field force engagement with Primary Care Physicians, specialists and health systems delivering the right information at the right time."

This agreement follows on the November 9, 2021 collaboration for the commercialization of rimegepant and zavegepant outside the United States, in connection with which Pfizer invested $350 million to acquire 2.6% of Biohaven's common stock at $173 per share.

"We are excited to announce Pfizer's proposed acquisition of Biohaven, recognizing the market leadership of NURTEC® ODT, our breakthrough all in one migraine therapy, and the untapped potential of our CGRP franchise," said Vlad Coric, MD, Chairman and Chief Executive Officer of Biohaven. "Pfizer's capabilities will accelerate our mission to deliver our migraine medicines to even more patients, while the new R&D company is well positioned to bring value to patients and shareholders by focusing on our innovative pipeline for neurological and other disorders. We believe this transaction represents significant future value creation for patients and our collective shareholders."

Following the closing, New Biohaven will continue to operate under the Biohaven name. New Biohaven will be led by Vlad Coric, MD, as Chairman and CEO, and include other members of the current management team of Biohaven. Biohaven common shareholders will receive, for each Biohaven share, 0.5 of a share of New Biohaven distributed via a pro rata distribution of SEC-registered, publicly listed shares. At distribution, New Biohaven will be capitalized with $275 million of cash. New Biohaven will also have the right to receive tiered royalties from Pfizer on any annual net sales of rimegepant and zavegepant in the United States in excess of $5.25 billion.

Pfizer expects to finance the transaction with existing cash on hand.

Pfizer's acquisition of Biohaven is subject to the completion of the New Biohaven spin-off transaction and other customary closing conditions, including receipt of regulatory approvals and approval by Biohaven's shareholders. The companies expect the transaction to close by early 2023.

Due to the proposed transaction, Biohaven will not hold a conference call to discuss its first quarter 2022 financial results and will issue a press release and file a quarterly report on Form 10-Q with the U.S. Securities and Exchange Commission announcing those results on May 10, 2022.

J.P. Morgan acted as Pfizer's financial advisor for the transaction with Ropes & Gray LLP acting as its legal advisor.  Centerview Partners acted as Biohaven's financial advisor for the transaction with Sullivan & Cromwell LLP acting as its legal advisor.

**Insiders' Interests in the Proposed Transaction**

25.     Biohaven insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Biohaven.

26.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Pfizer.  Under the terms of the Merger Agreement, all outstanding Company options, and restricted stock units ("RSUs") will vest and convert into the right to receive cash payments. The estimated aggregate amount that would be realized by the 6 non-employee directors in respect of their unvested Company equity awards (after giving effect to the Spin-Off and the provisions of the Distribution Agreement) if the Merger were to be completed on May 31, 2022, is $5,751,249, and the estimated aggregate amount that would be realized by the 2 Company executive officers who are not named executive officers in respect of their unvested Company equity awards (after giving effect to the Spin-Off and the provisions of the Distribution Agreement) if the Merger were to be completed on May 31, 2022, is $9,084,850.  The following table sets forth the cash payments the Company's named executive officers will receive with respect to their Company equity awards upon closing of the merger:

| Named Executive Officer | Unvested Company Restricted Stock Units ($) | Unvested Company Stock Options ($) |
|---|---|---|
| Vlad Coric, M.D. | $15,733,575 | $12,806,123 |
| Matthew Buten | $5,568,750 | $514,287 |
| William Jones, Jr. | $3,601,125 | $2,688,850 |
| Kimberly Gentile | $3,118,500 | $4,129,129 |
| Elyse Stock, M.D. | $3,062,813 | $4,058,551 |
| James Engelhart | $3,111,075 | $4,458,859 |

27.     Moreover, if they are terminated in connection with the Proposed Transaction, Biohaven's named executive officers stand to receive substantial cash severance payments in the form of Golden Parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash ($)[2] | Equity ($)[3] | Perquisites/Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Vlad Coric, M.D. | | | | |
| _Chief Executive Officer_ | $2,040,000 | $28,539,698 | $47,622 | $30,927,320 |
| Matthew Buten | | | | |
| _Chief Financial Officer_ | $1,475,861 | $6,083,037 | $29,769 | $7,588,667 |
| William Jones, Jr. | | | | |
| _Chief Commercial Officer of Migraine & Common Diseases_ | $2,133,719 | $6,289,975 | $47,622 | $8,471,316 |
| Kimberly Gentile | | | | |
| _Senior Vice President of Clinical Operations_ | $224,032 | $7,247,629 | – | $7,471,661 |
| Elyse Stock, M.D. | | | | |
| _Chief Medical Officer_ | $278,927 | $7,121,364 | – | $7,400,291 |
| James Engelhart | | | | |
| _Former Chief Financial Officer_ | – | $7,569,934 | – | $7,569,934 |

## The Proxy Statement Contains Material Misstatements and Omissions

28.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Biohaven's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Centerview; (ii) Centerview's potential conflicts of interest; and (iii) the background of the Proposed Transaction.  Accordingly, Biohaven stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Projections and Centerview's*
*Financial Analyses*

30.     The Proxy Statement omits material information regarding the Company's
Financial Projections.

31.     For example, the Proxy Statement fails to disclose the line items underlying: (i)
Gross Profit; (ii) Operating Income; and (iii) Unlevered Free Cash Flow.

32.     The Proxy Statement also omits material information regarding Centerview's
financial analyses.

33.     The Proxy Statement describes Centerview's fairness opinion and the various
valuation analyses performed in support of its opinion.  However, the description of Centerview's
fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses.
Without this information, as described below, Biohaven's public stockholders are unable to fully
understand these analyses and, thus, are unable to determine what weight, if any, to place on
Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction
or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of
information available to Biohaven's stockholders.

34.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement
fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range
of 9.0% to 12.0%; (ii) the implied terminal multiples resulting from the analysis; and (iii) the
Company's outstanding shares on a fully diluted basis.

35.     The omission of this information renders the statements in the "Unaudited
Prospective Financial Information of the Company" and "Opinion of Centerview Partners LLC"

sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Potential Conflicts of Interest***

36.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Centerview.

37.     The Proxy Statement sets forth:

> In the two years prior to the date of its written opinion, Centerview had been engaged to provide and is currently providing financial advisory services to Pfizer, including in connection with Pfizer's acquisition of Arena Pharmaceuticals, Inc. in 2022 and certain other strategic matters. Centerview has received, or expects to receive, between $20 million and $30 million in aggregate compensation from Pfizer for work performed during such period.

Proxy Statement at 57.  The Proxy Statement fails, however, to disclose the specific strategic matters that Centerview has provided to Pfizer in the two years prior to the date of its written fairness opinion and whether these strategic matters in any way related to a potential acquisition of Biohaven by Pfizer.

38.     Full disclosure of investment banker compensation and all potential conflicts is required due to the significant role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39.     The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

40.     The Proxy Statement omits material information concerning the background of the Proposed Transaction.

41.     For example, the Proxy Statement sets forth as one of the reasons for the Board's entry into the Proposed Transaction that the Board believed the proposed Transaction to be more favorable than the possible alternatives available to the Company, including a collaboration proposal, from a party identified in the Proxy Statement as Party A, for certain assets that would be licensed from a multinational biopharmaceutical company, other than Pfizer ("Collaboration Proposal A").  The Proxy Statement, however, omits the specific terms of Collaboration Proposal A to allow Biohaven stockholders to assess whether the Proposed Transaction is more favorable than Collaboration Proposal A.

42.     The omission of this information renders the statements in the "Background of the Merger and the Spin-Off" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

43.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of Biohaven will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about (i) the Company's financial projections and the inputs and assumptions underlying Centerview's financial analyses; (ii) Centerview's potential conflicts of interest; and (iii) the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.    Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

50.    Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of Biohaven within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Biohaven, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

54.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Biohaven stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Biohaven, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Biohaven stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  July 13, 2022                                **WEISS LAW**

                                        By _____
                                           Michael Rogovin
                                           476 Hardendorf Ave. NE
                                           Atlanta, GA 30307
                                           Tel: (404) 692-7910
                                           Fax: (212) 682-3010
                                           Email: mrogovin@weisslawllp.com

                                           *Attorneys for Plaintiff*